UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| SCOTT EVERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:12-CV-118 |
| | ) | (PHILLIPS/GUYTON) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of Plaintiff's Motion for Judgment On The Pleadings

and Memorandum in Support [Docs. 15 and 16] and Defendant's Motion for Summary Judgment

and Memorandum in Support [Docs. 17 and 18]. Plaintiff Scott Evers seeks judicial review of

the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant

Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On February 26, 2010, the Plaintiff filed an application for a period of disability,

disability insurance benefits, and/or supplemental security income, claiming a period of

disability beginning November 16, 2009. [Tr. 108-109]. After his application was denied

initially and also denied upon reconsideration, the Plaintiff requested a hearing. On July 27,

2011, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 26-56].

On September 8, 2011, the ALJ found that the Plaintiff was not disabled.

The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision. Both parties have filed dispositive motions, memorandums, and supplemental replies in support of their positions. [Docs. 15, 16, 17, 18, 19, 22].

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since November 16, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairment[s]: degenerative disc disease with radiculopathy, obesity, gout (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant must avoid hazards; that the claimant cannot balance; that the claimant cannot frequently bend or stoop; and that the claimant has no severe mental limitations.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on January 16, 1975 and was 34 years old, which is defined as a younger individual 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to

communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 16, 2009, through the Date of this decision (20 CFR 404.1520(g)).

[Tr. 14-25].


## II.    DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or

3

whether a specific job vacancy exists for him, or whether he would be hired if he applied for

work.  42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. §

404.1520).  Plaintiff bears the burden of proof at the first four steps.  Walters, 127 F.3d at 529.

The burden shifts to the Commissioner at step five.  Id.  At the fifth step, the Commissioner must

prove that there is work available in the national economy that the claimant could perform.  Her

v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S.

137, 146 (1987)).


III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the

4

correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to

5

reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

IV.    **EVIDENCE**

The evidence on review can be summarized as follows:

A.    *Medical Evidence*

In 2007, Plaintiff fell at work and injured his back. An MRI revealed disc herniations at L3-4, L4-5, and L5-S1, with nerve impingement occurring at L5-S1 with impingement at L5-S1. [Tr. 578]. An EMG confirmed the presence of acute radiculopathies involving the L4, L5, and S1 nerve roots. [Tr. 265]. Treatment notes from 2007 to 2009 mention absent reflexes, [Tr. 351], positive straight-leg-raise tests, and mild swelling in the right leg, [Tr. 348, 351]. During the same period, the Plaintiff was able to work despite his pain. [Tr. 349]. Because of occasional falls [Tr. 344], Plaintiff used a cane, [Tr. 345], and eventually requested a rollator walker, [Tr. 579].

6

David A. Cox, M.D., has been Plaintiff's primary care physician since February 21, 2007. Notes from a visit on November 30, 2009, shortly after the alleged onset of disability, include Plaintiff's complaints of insomnia and remark that the Plaintiff was recently laid off from work. [Tr. 347]. In visits from 2010, the Plaintiff complained of pain radiating from his low back, [Tr. 344-346], and Dr. Cox noted on August 6, 2010, "He is on a rather significant amount of pain medications from the pain clinic but states he is still in constant pain . . . ." [Tr. 344]. On August 6, 2010, Dr. Cox also completed a worksheet entitled "Treating Relationship Inquiry." Therein, Dr. Cox stated *inter alia* that the Plaintiff cannot lift anything weighing a pound or more. [Tr. 362]. He also indicated that the Plaintiff could not perform a forty-hour work week. [Tr. 362].

In visit notes from September 22, 2010, Dr. Cox cited anxiety as the Plaintiff's chief complaint. [Tr. 574]. Dr. Cox noted the Plaintiff's "rather severe constant back pain," but he remarked that there was "apparently no radiation, no weakness, and no loss of sensation." [Tr. 574]. In October 2010, anxiety was the Plaintiff's chief complaint, and in January 2011, his chief complaint was chest pain. [Tr. 572-73]. The Plaintiff also reported, however, that his back pain persisted.

In May 2010, Jeffrey S. Summers, M.D., a state-examining physician, examined the Plaintiff and found:

> Scott Evers is a 35 year-old white male who presents today for office evaluation of "back problems." Mr. Evers gives a 3-year history of low back pain. His condition has persisted despite conservative treatment. On his examination today, he has a decrease in range of motion with limited effort. He has an exaggeratedly abnormal gait. Based on these findings, it is reasonable to expect that Mr. Evers will have difficulty bending, stooping, kneeling, squatting, crouching, crawling, climbing, and lifting greater than 20 lbs., as well as standing and walking for

7

greater than 60 minutes continuously, or 6 hours total in a single workday.

[Tr. 269].

James E. Fox, M.D., was assigned to Plaintiff through the workers compensation program and treated the Plaintiff for pain management before and through the alleged period of disability. In August of 2010, Plaintiff asked Dr. Fox to write a note "stating that he is unable to work." [Tr. 579]. Dr. Fox provided a short statement that Plaintiff "is being treated for low back pain and is currently unable to work." [Tr. 590].

In early 2011, Plaintiff had a spinal column stimulator ("SCS"), surgically implanted as a test procedure. [Tr. 517]. Plaintiff reported that "he did very well on [the] trial [and that it] controlled his pain much better." [Tr. 517]. Plaintiff wanted to have permanent SCS inserted as soon as possible. On April 29, 2011, Plaintiff had a permanent SCS surgically implanted. [Tr. 596]. On June 6, 2011, after a post-operation infection and some required adjustments to the device, Plaintiff reported to Dr. Fox that at last the stimulator was working and that he was able to complete his activities of daily living "without too much difficulty or assistance since the SCS is doing [its] job." [Tr. 583]. He appeared at Dr. Fox's clinic that day ambulating without his cane or walker.

B.     *Other Evidence*

At the hearing, Plaintiff testified that he is an electrician by trade and was injured on the job in 2003. [Tr. 31]. He testified that he has back pain that starts at a spot in the middle of his lower back and radiates to both sides of his body down through his legs. [Tr. 32]. He testified that he is constantly in pain. [Tr. 32]. He testified that his SCS improved his back condition, and he stated that he was attempting to decrease the amount of narcotic medications he takes.

8

[Tr. 33]. At the time of the hearing, Plaintiff was taking Neurontin, Oxycontin, and Oxycodone for pain. [Tr. 33]. Plaintiff testified that he could not walk without an assistive device. [Tr. 36]. Plaintiff said he spent his typical day doing research, studying the Bible, spending time with his children, and watching television. [Tr. 38]. Plaintiff testified that he does not help with household chores. [Tr. 39]. Plaintiff stated that he can drive but not long distances. [Tr. 44]. Plaintiff testified that he attends church services up to three times per week. [Tr. 44].

Jane Hall, a vocational expert, described the Plaintiff's previous work as an electrician at the master level and journeyman level. [Tr. 52-53]. The ALJ asked her to assume a younger individual who has training as a master electrician with the Plaintiff's past relevant work history but is limited to light exertion. The ALJ stated that the person must avoid hazards and cannot perform work where balancing is required. He also could not frequently bend or stoop. Ms. Hall testified that a person with those hypothetical ability and impairments could not perform the Plaintiff's past relevant work. [Tr. 53]. Ms. Hall testified, however, that such a person could perform work available in the local and national economies including work as a cashier, production worker, and hand packager. [Tr. 53-54].

## V.    POSITIONS OF THE PARTIES

The Plaintiff argues that the Court should reverse and remand this case pursuant to Sentence Four of Section 205(g) of the Social Security Act because the ALJ violated the treating physician rule in evaluating both the opinion of Dr. Fox and Dr. Cox. The Plaintiff maintains that the ALJ did not supply good reasons for not affording weight to the opinions of these treating physicians. [Doc. 16 at 8-10, 11-14]. He also argues that the ALJ should have considered a closed period of disability. [Doc. 16 at 8-11]. Finally, he argues that the Court

9

should remand the case under sentence six of Section 205(g) of the Social Security Act because new and material evidence demonstrates that the Plaintiff's improvement, which was cited by the ALJ in his decision, did not continue for enough time to affect the disability claim. [Doc. 16 at 14].

The Commissioner argues that substantial evidence supports the ALJ's decision to discount the opinions of Dr. Fox and Dr. Cox. [Doc. 18 at 3-11]. The Commissioner maintains that the Plaintiff has not cited any authority to support his position that the ALJ should have considered whether a claimant is entitled to a closed period of disability. [Id. at 12]. The Commissioner notes that the Plaintiff did not allege that he was disabled for a closed period. [Id. at 13]. The Commissioner contends that the evidence cited by the Plaintiff does not warrant a remand because the evidence submitted does not raise a reasonable possibility that the ALJ would have reached a different decision. [Id. at 14].

The Plaintiff has filed a response to the Commissioner's Memorandum. [Doc. 19]. The Plaintiff argues that the Commissioner invites the Court to engage in *post hoc* reasoning to find support for the ALJ's decision. [Id. at 3]. Further, the Plaintiff argues that the Commissioner's arguments invite the Court to review *de novo* the evidence. [Id. at 4-5]. Finally, the Plaintiff argues that the Commissioner cites to outdated authority in Bogle v. Sullivan, 998 F.2d 342 (6th Cir. 1993). [Id. at 5-6].

In his final reply, the Commissioner argues that the ALJ provided adequate reasons for rejecting the opinions of Dr. Fox and Dr. Cox. [Doc. 22 at 2-3]. The Commissioner maintains that his brief is consistent with the applicable authority. [Id. at 4-5].

## VI.   ANALYSIS

The Plaintiff presents three allegations of error.  First, the ALJ erred in addressing the medical opinions of James E. Fox, M.D., and second, the ALJ erred in addressing the medical opinions of David A. Cox, M.D.   Third, the Plaintiff maintains that the ALJ erred by not considering a closed period of disability.  In addition, the Plaintiff argues that this case should be remanded to the Commissioner, pursuant to sentence six of Section 205(g) of the Social Security Act, to consider new evidence.  The Court will address each issue in turn.

### A.   *James E. Fox, M.D.*

James E. Fox, M.D., of the Active Pain Treatment Medical Practice, treated the Plaintiff's low back pain during the relevant period.  [Tr. 576-83].  On August 30, 2010, Dr. Fox wrote a short letter stating, in its entirety: "Scott Evers . . . is currently a patient of mine in pain management and has been since January 21, 2010.  Patient is being treated for low back pain, and is currently unable to work.  If you have any further questions please contact the office." [Tr. 590].  As noted above, a SCS was implanted in the Plaintiff's spine approximately eight months later, and in June 2011, the Plaintiff reported to Dr. Fox that he was able to complete his activities of daily living "without too much difficulty."  [Tr. 583].

The ALJ explained the weight he afforded to Dr. Fox's statement regarding the Plaintiff's inability to work, as follows:

> Dr. Fox, the claimant's pain management physician, wrote a letter dated August of 2010 stating that the claimant was unable to work. (Exhibit 20F).  Dr. Fox did not provide any explanation regarding his conclusion.  Moreover, the undersigned notes that this is not a medical opinion but rather an administrative finding reserved for the Commissioner.  In addition, this letter was written prior to the claimant's SCS placement.  Accordingly, the undersigned gives Dr. Fox's conclusion that the claimant is unable to work no weight.

11

[Tr. 18].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. See King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984); Sullenger v. Comm'r of Soc. Sec., 255 Fed. App'x 988, 992 (6th Cir. 2007).

The Court finds Dr. Fox's statement about the Plaintiff's ability to perform work is not protected by the Treating Physician Rule codified in 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2). The statement — "Patient is being treated for low back pain, and is currently

12

unable to work" — does not describe the nature and severity of the Plaintiff's low back pain. The statement does not describe the nature of the low back pain by stating, for example, its origin, duration, likely treatment, nor does the statement describe the severity of the condition, for example, the consistency of the pain, effective treatments or lack of effective treatments for the pain, the type and duration of the pain. The Court, thus, finds that Dr. Fox's statement is not an opinion as to the nature and severity of an impairment under 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2). Further, the Court finds that the statement is not well-supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2). In fact, Dr. Fox does not cite any medical evidence or clinical or laboratory tests in support of his findings. Accordingly, the Court finds that Dr. Fox's statement should not be afforded the deliberative protections described in 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2).

The Court's finding is consistent with 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2), which instruct applicants that the Commissioner is "responsible for making the determination or decision about whether you meet the statutory definition of disability." Moreover it is consistent with the case law of the Sixth Circuit, which also holds that the issue of whether the claimant can or cannot perform work is reserved for the ALJ's determination. See, e.g., Bass v. McMahon, 499 F.3d 506, 511 (6th Cir. 2007) ("[T]he conclusion of disability is reserved to the Secretary . . . ."); Gaskin v. Comm'r of Soc. Sec., 280 Fed. App'x 472, 475-476 (6th Cir. 2008) ("[T]he ultimate determination of disability is a matter reserved to the Commissioner.").

The Court finds that the ALJ did not err in addressing the Dr. Fox's statement that the Plaintiff cannot work. The undersigned finds that the Plaintiff's allegation of error relating to Dr. Fox's statement is not well-taken.

13

B.    *David A. Cox, M.D.*

As described above, David A. Cox, M.D., was the Plaintiff's primary care physician during the relevant period. In 2010, the Plaintiff complained to Dr. Cox of pain radiating from his low back, [Tr. 344-346], and Dr. Cox noted on August 6, 2010, "He is on a rather significant amount of pain medications from the pain clinic but states he is still in constant pain . . . ." [Tr. 344]. On the same visit, Dr. Cox completed a worksheet entitled "Treating Relationship Inquiry." [Tr. 340-43].

The Treating Relationship Inquiry is composed of a series of multiple-choice, short-answer, and yes/no questions, to which Dr. Cox responded. Dr. Cox stated that the Plaintiff suffers from degenerative disc disease of the lumbar spine. [Tr. 340]. Dr. Cox checked "no," indicating plaintiff could not perform a forty-hour work week. [Tr. 340]. Dr. Cox indicated that the Plaintiff could continuously sit for three hours in an eight-hour day and could not stand or walk for any continuous period during an eight-hour day. [Tr. 340]. Dr. Cox submitted that the Plaintiff could never lift or carry any object weighing in excess of one pound. [Tr. 340]. In a multiple-choice question, Dr. Cox submitted that the Plaintiff could "never" bend, stoop, squat, kneel, climb stairs, crawl, or walk on an uneven surface. [Tr. 341]. Dr. Cox opined that the Plaintiff would require forty minutes of bed rest each day. [Tr. 341].

Dr. Cox indicated that the Plaintiff's pain was "[m]oderately severe" and described the Plaintiff's pain as "low back and both hips continuously in spite of continuous use of narcotics." [Tr. 342]. Dr. Cox confirmed that the Plaintiff suffered from balance disturbance and "frequently falls, possibly secondary to medications." [Tr. 342]. Dr. Cox opined that the Plaintiff was not capable of being in a work environment for eight hours at a time because he was "unable to sit up that long." [Tr. 343]. Dr. Cox checked a box submitting that "Objective

14

evidence supporting my opinions exists in my treatment notes." [Tr. 343]. He did not cite any specific treatment notes, medical tests, lab results, or other evidence in support of his conclusions.

The ALJ described the weight afforded to Dr. Cox's submissions by stating:

> Dr. Cox, one of the claimant's treating physicians, completed a medical source statement in August of 2010. (Exhibit 8F). Dr. Cox concluded that the claimant could not lift any amount of weight; that the claimant could not stand or walk during an 8-hour day; that the claimant could sit 3 hours in an 8-hour day; that the claimant had postural and environmental limits; and that the claimant requires 40 minutes of bed rest per day. The undersigned finds that Dr. Cox's conclusions are overly restrictive based on the recent medical records indicating that the claimant reported an improvement in his pain due to the SCS placement. (Exhibit 19F at pp. 8-9). Thus, the undersigned gives this opinion little weight.

[Tr. 18].

As noted above, a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2). Where an opinion does not garner controlling weight, the ALJ must evaluate it according to the delineated statutory factors. Id.

The Court finds that Dr. Cox's findings in the Treating Relationship Inquiry are not entitled to controlling weight because they are not supported by medically acceptable clinical and laboratory diagnostic techniques and they are inconsistent with the other evidence in the case record. Dr. Cox did not cite any specific medical evidence in support of his extremely restrictive findings, and the medical evidence in the record does not demonstrate that the Plaintiff's lower back impairment imposes such restrictive constraints on his ability to work.

15

Dr. Cox's findings are inconsistent with the conclusions reached by Jeffrey Summers, M.D., during a consultative examination performed in May 2010, just three months prior to Dr. Cox completing the Treating Relationship Inquiry. In his visit with Dr. Summers, the Plaintiff displayed limited effort in flexing his back and would not attempt to extend or laterally extend at the waist. [Tr. 268]. Dr. Summers noted Plaintiff walked in an exaggerated shuffling manner with a stooped posture and used a rolling walker, but Dr. Summers noted Plaintiff did not appear to be dependent on it. [Tr. 269]. Dr. Summers concluded Plaintiff could perform a range of light work, which is wholly inconsistent with Dr. Cox's assessment. [Tr. 269].

Rick Parsons, M.D., who treated Plaintiff in late 2010 for his knee complaints, reported Plaintiff's clinical examinations were unremarkable and an MRI scan of his right knee was normal. [Tr. 425-26, 432, 435, 440, 449]. Dr. Parsons observed, "A review of the MRI again shows no evidence of bony abnormality, meniscal pathology, or even an effusion." [Tr. 425]. Dr. Parsons released Plaintiff from his care in December 2010, and noted Plaintiff had no change in his restrictions or impairment from his original back injury in 2007. [Tr. 426].

In February 2011, Plaintiff visited Paul Peterson, M.D., for placement of the spinal column stimulator, and although Plaintiff displayed an ataxic gait and used a walker, Dr. Peterson's objective findings were unremarkable, including no tenderness, normal strength, and full, painless range of motion. [Tr. 600, 603]. In June 2011, the Plaintiff reported that the stimulator provided quite a bit of relief. [Tr. 593]. Dr. Peterson noted, "His wound is healing nicely and he is very pleased with the results." [Tr. 493].

Finally, the assessment of the State agency medical consultants, Kanika Chandhuri, M.D., and Nathaniel Robinson, M.D., also undermine the findings of Dr. Cox. [Tr. 18, 270-78, 395-403]. Both consulting physicians concluded that the Plaintiff could perform light work.

16

The medical evidence discussed above is inconsistent with the restrictions suggested by Dr. Cox. The Court, thus, finds that the opinions expressed by Dr. Cox in the Treating Relationship Inquiry are not well-supported by medically acceptable clinical and laboratory diagnostic techniques. The Court further finds that the findings are inconsistent with the other substantial evidence in the case record. Dr. Cox's findings are, therefore, not entitled to controlling evidence. Even where such findings are not entitled to controlling evidence, the ALJ must discuss the statutory factors in determining the weight to be afforded to the findings.

The ALJ did not, however, reference any of this medical evidence in the portion of his opinion that discusses his reasons for discounting Dr. Cox's findings, nor did he discuss any of the statutory factors – *i.e.* length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. The Plaintiff argues that this omission is reversible error. The Commissioner largely ignores the Plaintiff's position and, instead, argues that evidence to support the ALJ's decision existed in the record. The issue before the undersigned is whether a remand is warranted by the ALJ's failure to cite the conflicting medical evidence as his basis for discounting Dr. Cox's findings.

The Court of Appeals for the Sixth Circuit has recognized that there is a "narrow category of cases in which a 'de minimis' procedural violation may constitute harmless error, such as when 'a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it' or where the Commissioner 'has met the goal of . . . the procedural safeguard of reasons.'" Fisk v. Astrue, 253 Fed. App's 580, 586 (6th Cir. 2007) (citing Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 547 (6th Cir. 2004)). That is to say, there is the "rare case

17

of the ALJ's analysis meeting the goal of the rule even if not meeting its letter." <u>Nelson v. Comm'r of Soc. Sec.</u>, 195 Fed. App'x 462, 472 (6th Cir. 2006).

The Court finds that the instant case is the rare case in which the ALJ's analysis meets the goal of the rule even if not meeting the letter of the rule. The ALJ did not discuss the statutory factors with direct reference to Dr. Cox's findings. He did, however, discuss at length the evidence in the record that undermined the extreme findings indicated by Dr. Cox's responses in the Treatment Relationship Inquiry. He discussed: the examination findings of Dr. Summers, [Tr. 17]; the exaggerated pain behavior Plaintiff displayed at different times, [Tr. 14, 17]; the Plaintiff's 2008 visit at Tennessee Orthopedic Clinics at which he demonstrated a normal range of motion in his lumbar spine and had a normal gait without an assistive device, [Tr. 14]; the Plaintiff's reports that he quit working for reasons other than his impairments, [Tr. 17]; and the findings of the consulting physicians, [Tr. 18]. The Court finds that the ALJ's opinion discusses the medical evidence in the record supporting the ALJ's decision to afford no weight to Dr. Cox's findings in a manner that allows for meaningful review and provides an appropriate explanation of the basis for the decision to the Plaintiff.

Further, the Court finds that Dr. Cox's opinion is so patently deficient that the Commissioner could not credit it. The Plaintiff himself testified, in a somewhat disjunctive manner, that he can stand somewhere between fifteen and thirty-five minutes [Tr. 34-35], despite Dr. Cox's finding that he could not stand. Moreover, as the ALJ discussed the Plaintiff reported that he could complete the activities of daily life without "too much difficulty or assistance" following the insertion SCS. [Tr. 583]. This improvement, even if it took place after Dr. Cox filled out the Treating Relationship Inquiry, undermines the extreme restrictions – *e.g.* inability to lift any weight, inability to stand – contained in the Inquiry form.

18

In sum, the Court finds that the ALJ did not explicitly discuss the applicable statutory factors in determining the weight to be afforded to the Treating Relationship Inquiry completed by Dr. Cox. See 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2). The Court finds, however, that the ALJ's opinion as a whole describes substantial evidence supporting his decision not to afford weight to Dr. Cox's findings. The Court finds that the deficiency of the contents of the Treating Relationship Inquiry in combination with the explanation provided in the opinion as a whole renders any procedural error *de minimis*. Accordingly, the undersigned finds that the Plaintiff's allegation of error on this issue is not well-taken.

C.     *Closed Period of Disability*

The Plaintiff further argues that the ALJ erred by not considering a closed period of disability. In support of this position, the Plaintiff cites the Court to case law from the Court of Appeals: Myers v. Richardson, 471 F.2d 1265, 1267 (6th Cir. 1972), and Lang v. Sec'y of H.H.S., 875 F.2d 865, 1989 WL 40188 (6th Cir. 1989), along with a more recent, case from the Eastern District of Kentucky: Widener v. Astrue, No. 08-107, 2009 WL 2778215 (E.D. Ky. Aug. 27, 2009).

The Commissioner responds that the Plaintiff did not allege to the ALJ that he was disabled for a closed period. [Doc. 18 at 12]. The Commissioner argues that the Plaintiff has not cited any binding authority that would require the ALJ to specifically consider whether a claimant is entitled to a closed period of disability, especially when the claimant does not allege to the ALJ that he was disabled for a closed period. [Id.].

The Court has reviewed and considered the case law cited by the Plaintiff, which directs that a "claimant who meets the twelve-month durational requirement of 42 U.S.C. § 423(d)(1)(A) may be entitled to benefits from the time his disability commences until such time

19

as the disability ceases." Id. at *5. In this case, the ALJ's decision does not contain a specific finding stating that he considered a closed period of disability and found that the Plaintiff did not demonstrate a closed period of disability. The ALJ did, however, consider the record as a whole, including medical evidence from the last five years that indicated the Plaintiff's symptoms were not as severe as Plaintiff reported and observations from sources that undercut the Plaintiff's credibility. [Tr. 17-18].

The ALJ did not find that the Plaintiff was unable to engage in any substantial gainful activity because of a medically determinable physical impairment that has lasted twelve months. See 42 U.S.C. § 1382c(a)(3)(A); Tr. 19. The ALJ based his decision on a longitudinal examination of the evidence and did not – as the Plaintiff alleges – rely solely on the improvement following the SCS implant. The Court finds that the longitudinal examination undertaken in the opinion implicitly demonstrates that the ALJ found the Plaintiff did not demonstrate a closed period of disability.

The Court has not found, nor has it been directed to any law, that would require the ALJ to use any specific language or make specific findings relating to the closed period of disability. The Court finds persuasive the cases from other courts within this Circuit concluding that no such requirement exists. See, e.g., Sielaff v. Comm'r of Soc. Sec., 2012 WL 567614, at *1 (N.D. Ohio 2012) (finding no law exists requiring an ALJ to specifically indicate that a closed period of disability had been considered and rejected); Campbell v. Astrue, 2009 WL 2745503 (E.D. Tenn. 2009) (Collier, C.J.). Therefore, the Court finds that the ALJ did not err by only implicitly addressing a closed period of disability in this case.

Accordingly, the undersigned finds that the Plaintiff's allegation of error on this issue is not well-taken.

*D.* *New Evidence*

Finally, the Plaintiff argues that the Court should remand this case pursuant to sentence six of the Social Security Act because new and material evidence demonstrates that the improvement in Plaintiff's impairments did not last long enough to affect the outcome of this case. [Doc. 16 at 14-15]. Specifically, the Plaintiff cites the Court to three pages of treatment notes from August 2011 through February 2012, which Plaintiff contends support a sentence six remand. [Doc. 16-1].

The Commissioner responds that only the August 2011 notes could possibly influence the ALJ's decision in this case, but the Commissioner maintains that the Plaintiff has failed to show that the benign August 2011 treatment notes were likely to change the ALJ's decision. The Commissioner maintains that the Plaintiff has failed to show how the treatment records from October 2011 and February 2012 could possibly have changed the ALJ's decision regarding his condition on or before September 8, 2011. [Doc. 18 at 15].

A court may remand a case pursuant to sentence six to consider evidence submitted to the court only if the claimant shows that the evidence is new and material and provides good cause for not submitting the evidence at a prior proceeding. See 42 U.S.C. § 405(g); Melkoyan v. Sullivan, 501 U.S. 89, 98, 101-02 (1991). To show that evidence is material, a claimant "must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988). "Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 478 (6th Cir. 2003).

The claimant bears the burden of proving evidence warrants remand under sentence six of 42 U.S.C. §405(g). See Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 653 (6th Cir. 2009) (citing Sizemore, 865 F.2d at 711).

The Court has reviewed the evidence submitted by the Plaintiff. The Court finds that the August 2011 notes, which discuss the Plaintiff's complaints of gout and remark that the Plaintiff "continues chronic low back pain, which has improved greatly with his stimulator[,]" are not material. The Court finds that the August 2011 notes are not material, because the Plaintiff has not demonstrated a reasonable probability that the ALJ would have reached a different decision if presented with the new evidence.

The Court finds that the October 2011 and February 2012 notes are not material because "[e]vidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." Jones, 336 F.3d at 478.

The Court finds that the Plaintiff has failed to demonstrate that the notes which are the basis of his sentence six remand request are material. A sentence six remand is, therefore, not appropriate. The undersigned finds that the Plaintiff's request for a sentence six remand is not well-taken.

## VII.    CONCLUSION

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing light work with certain enumerated restrictions. Substantial evidence supports the ALJ's findings and conclusions, and the undersigned finds that remand is not appropriate.  Therefore, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Judgment On The Pleadings **[Doc. 15]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 17]** be **GRANTED**.

Respectfully submitted,


_____s/ H. Bruce Guyton_____
United States Magistrate Judge

---

[1]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985).  The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general.  Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).