UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

SCOTT EVERS,                          )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )   No. 3:12-cv-118
                                      )   (Phillips/Guyton)
MICHAEL J. ASTRUE,                    )
                                      )
Commissioner of Social Security,      )
                                      )
        Defendant.                    )

MEMORANDUM OPINION

**I.     Introduction**

This Social Security appeal is before the Court for consideration of the Plaintiff's objection [Doc. 24] to the Report and Recommendation ("R&R") issued by United States Magistrate H. Bruce Guyton on January 2, 2013 [Doc. 23]. For the reasons that will follow, the Court **OVERRULES** Plaintiff's objections and **AFFIRMS** Magistrate Judge Guyton finding that Plaintiff's Motion for Judgment on the Pleadings [Doc. 15] should be **DENIED** and the Commissioner's Motion for Summary Judgment [Doc. 17] should be **GRANTED**.

**II.    Background**

The following facts are taken from the R&R.

In 2007, Plaintiff fell at work and injured his back. An MRI revealed disc herniations at L3-4, L4-5, and L5-S1, with nerve impingement occurring at L5-S1 with impingement at L5-S1. [Tr. 578]. An EMG confirmed the presence of acute radiculopathies involving the L4, L5, and S1 nerve roots. [Tr. 265]. Treatment notes from 2007 to 2009 mention absent reflexes, [Tr. 351],

1

positive straight-leg-raise tests, and mild swelling in the right leg, [Tr. 348, 351]. During the same period, the Plaintiff was able to work despite his pain. [Tr. 349]. Because of occasional falls [Tr. 344], Plaintiff used a cane, [Tr. 345], and eventually requested a rollator walker, [Tr. 579].

David A. Cox, M.D., has been Plaintiff's primary care physician since February 21, 2007. Notes from a visit on November 30, 2009, shortly after the alleged onset of disability, include Plaintiff's complaints of insomnia and remark that the Plaintiff was recently laid off from work. [Tr. 347]. In visits from 2010, the Plaintiff complained of pain radiating from his low back, [Tr. 344-346], and Dr. Cox noted on August 6, 2010, "He is on a rather significant amount of pain medications from the pain clinic but states he is still in constant pain . . . ." [Tr. 344]. On August 6, 2010, Dr. Cox also completed a worksheet entitled "Treating Relationship Inquiry." Therein, Dr. Cox stated *inter alia* that the Plaintiff cannot lift anything weighing a pound or more. [Tr. 362]. He also indicated that the Plaintiff could not perform a forty-hour work week. [Tr. 362].

In visit notes from September 22, 2010, Dr. Cox cited anxiety as the Plaintiff's chief complaint. [Tr. 574]. Dr. Cox noted the Plaintiff's "rather severe constant back pain," but he remarked that there was "apparently no radiation, no weakness, and no loss of sensation." [Tr. 574]. In October 2010, anxiety was the Plaintiff's chief complaint, and in January 2011, his chief complaint was chest pain. [Tr. 572-73]. The Plaintiff also reported, however, that his back pain persisted.

In May 2010, Jeffrey S. Summers, M.D., a state-examining physician, examined the Plaintiff and found:

> Scott Evers is a 35 year-old white male who presents today for office evaluation of "back problems." Mr. Evers gives a 3-year history of low back pain. His condition has persisted despite conservative treatment. On his examination today, he has a

2

> decrease in range of motion with limited effort. He has an exaggeratedly abnormal gait. Based on these findings, it is reasonable to expect that Mr. Evers will have difficulty bending, stooping, kneeling, squatting, crouching, crawling, climbing, and lifting greater than 20 lbs., as well as standing and walking for greater than 60 minutes continuously, or 6 hours total in a single workday.

[Tr. 269].

James E. Fox, M.D., was assigned to Plaintiff through the workers compensation program and treated the Plaintiff for pain management before and through the alleged period of disability. In August of 2010, Plaintiff asked Dr. Fox to write a note "stating that he is unable to work." [Tr. 579]. Dr. Fox provided a short statement that Plaintiff "is being treated for low back pain and is currently unable to work." [Tr. 590].

In early 2011, Plaintiff had a spinal column stimulator ("SCS"), surgically implanted as a test procedure. [Tr. 517]. Plaintiff reported that "he did very well on [the] trial [and that it] controlled his pain much better." [Tr. 517]. Plaintiff wanted to have permanent SCS inserted as soon as possible. On April 29, 2011, Plaintiff had a permanent SCS surgically implanted. [Tr. 596]. On June 6, 2011, after a post-operation infection and some required adjustments to the device, Plaintiff reported to Dr. Fox that at last the stimulator was working and that he was able to complete his activities of daily living "without too much difficulty or assistance since the SCS is doing [its] job." [Tr. 583]. He appeared at Dr. Fox's clinic that day ambulating without his cane or walker.

At the hearing, Plaintiff testified that he is an electrician by trade and was injured on the job in 2003. [Tr. 31]. He testified that he has back pain that starts at a spot in the middle of his lower back and radiates to both sides of his body down through his legs. [Tr. 32]. He testified that he is constantly in pain. [Tr. 32]. He testified that his SCS improved his back condition, and

3

he stated that he was attempting to decrease the amount of narcotic medications he takes. [Tr. 33]. At the time of the hearing, Plaintiff was taking Neurontin, Oxycontin, and Oxycodone for pain. [Tr. 33]. Plaintiff testified that he could not walk without an assistive device. [Tr. 36]. Plaintiff said he spent his typical day doing research, studying the Bible, spending time with his children, and watching television. [Tr. 38]. Plaintiff testified that he does not help with household chores. [Tr. 39]. Plaintiff stated that he can drive but not long distances. [Tr. 44]. Plaintiff testified that he attends church services up to three times per week. [Tr. 44].

Jane Hall, a vocational expert, described the Plaintiff's previous work as an electrician at the master level and journeyman level. [Tr. 52-53]. The ALJ asked her to assume a younger individual who has training as a master electrician with the Plaintiff's past relevant work history but is limited to light exertion. The ALJ stated that the person must avoid hazards and cannot perform work where balancing is required. He also could not frequently bend or stoop. Ms. Hall testified that a person with those hypothetical ability and impairments could not perform the Plaintiff's past relevant work. [Tr. 53]. Ms. Hall testified, however, that such a person could perform work available in the local and national economies including work as a cashier, production worker, and hand packager. [Tr. 53-54].

On February 26, 2010, the Plaintiff filed an application for a period of disability, disability insurance benefits, and/or supplemental security income, claiming a period of disability beginning November 16, 2009. [Tr. 108-109]. After his application was denied initially and also denied upon reconsideration, the Plaintiff requested a hearing. On July 27, 2011, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 26-56]. On September 8, 2011, the ALJ found that the Plaintiff was not disabled.

4

### a. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since November 16, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairment[s]: degenerative disc disease with radiculopathy, obesity, gout (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant must avoid hazards; that the claimant cannot balance; that the claimant cannot frequently bend or stoop; and that the claimant has no severe mental limitations.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on January 16, 1975 and was 34 years old, which is defined as a younger individual 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 16, 2009, through the Date of this decision (20 CFR 404.1520(g)).

[Tr. 14-25].

### III. Standard of Review

Judicial review of a Commissioner's decision is limited to an inquiry into whether the Commissioner failed to apply correct legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). It is immaterial whether the record also possesses substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge would have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The scope of the Court's review is limited to an examination of the record only, and the Court "'may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility.'" *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citations omitted).

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. *See Id.* at 547. On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. Plaintiff's Objections

The Plaintiff raises three objections to the R&R: 1) The Plaintiff objects to the R&R's conclusion that the Commissioner's violation of the Treating Source Rule is harmless error; 2) the Court should avoid a holding that relieves ALJs of their duty to determine whether claimant's disability lasted a continuous period of not less than twelve months; and, 3) the Plaintiff objects to the R&R's conclusion regarding remand under Sentence Six.

## V. Analysis

### a. Treating Source Rule

The Plaintiff objects to the R&R's conclusion that the Commissioner's violation of the Treating Source Rule[1] is harmless error. The Plaintiff argues that the Magistrate Judge improperly ruled when he held that the ALJ did not err by refusing to give Dr. Cox and Dr. Fox's opinions controlling weight.

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." SSR 96-2p, 1996 WL 374188, at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

Dr. Fox's "evaluation" read, in its entirety as follows:

---

[1] Codified in 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2).

7

> Scott Evers . . . is currently a patient of mine in pain management and has been since January 21, 2010. Patient is being treated for low back pain, and is currently unable to work. If you have any further questions please contact the office.

[Tr. 590]. The Court is in full agreement with the Magistrate Judge and the ALJ. The letter, excerpted above, is not, in any way, adequate to command controlling weight in a court of law. The ALJ also ruled that Dr. Cox, the Plaintiff's primary care physician during the relevant period, similarly failed to conform to medically acceptable clinical and laboratory diagnostic techniques, and as such, his evaluation is not entitled to controlling weight. The ALJ found, in relevant part that,

> Dr. Cox, one of the claimant's treating physicians, completed a medical source statement in August of 2010. (Exhibit 8F). Dr. Cox concluded that the claimant could not lift any amount of weight; that the claimant could not stand or walk during an 8-hour day; that the claimant could sit 3 hours in an 8-hour day; that the claimant had postural and environmental limits; and that the claimant requires 40 minutes of bed rest per day. The undersigned finds that Dr. Cox's conclusions are overly restrictive based on the recent medical records indicating that the claimant reported an improvement in his pain due to the SCS placement. (Exhibit 19F at pp. 8-9). Thus, the undersigned gives this opinion little weight.

[Tr. 18]. The Court finds that the Magistrate Judge and the ALJ did not err in reaching their conclusions and that the ALJ supplied "good reasons" for refusing to give either doctor's evaluation controlling weight.

The Magistrate Judge does acknowledge, however, that the ALJ failed to reference any of the medical evidence provided by other doctors that contradicted that of doctors Fox and Cox, which, is in addition to discussing the applicable statutory factors, a facial error. The Court agrees with the Magistrate Judge and finds this error to be *de minimis*. Considering that the evaluations presented to the ALJ by doctors Fox and Cox fails to meet the minimum standards of acceptable clinical and laboratory diagnostic techniques the ALJ's ruling was otherwise proper.

### b. Twelve Months of Continuous Disability

The Plaintiff objects to the R&R by asserting that the Court should avoid a holding that relieves ALJs of their duty to determine whether claimant's disability lasted a continuous period of not less than twelve months. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." § 423(d)(1)(A).

The ALJ did not find that the Plaintiff was unable to engage in any substantial gainful activity because of a medically determinable physical impairment that has lasted twelve months. [Tr. 19]. The Magistrate Judge notes that "the ALJ, based his decision on a longitudinal examination of the evidence and did not – as the Plaintiff alleges – rely solely on the improvement following the SCS implant." [Doc. 23 at 20]. The Court agrees with Judge Guyton's finding that "the longitudinal examination undertaken in the opinion implicitly demonstrates that the ALJ found the Plaintiff did not demonstrate a closed period of disability." *Id.*

### a. Magistrate Judge's Recommendation not to Remand

Finally, the Plaintiff argues that, "The Court should find that the October 19, 2011, and February 6, 2012, records from Dr. Cox are material and therefore support a Sentence Six remand." [Doc. 24 at 7]. The Court and the Magistrate Judge have already addressed the nature of Dr. Cox's evaluation and the ALJ's decision to not afford the evaluation controlling weight. The Court is in complete agreement with the Magistrate Judge that the ALJ properly decided to not afford Dr. Cox's evaluation controlling weight due to the absence of medically acceptable clinical and laboratory diagnostic techniques. *See* § 404.1508.

## VI.　Conclusion

For the aforementioned reasons, the Court **OVERRULES** Plaintiff's objections to the R&R [Doc. 24] and **AFFIRMS** Magistrate Judge Guyton's finding that Plaintiff's Motion for Judgment on the Pleadings [Doc. 15] is **DENIED** and the Commissioner's Motion for Summary Judgment [Doc. 17] is **GRANTED**.

**IT IS SO ORDERED**.

ENTER:

s/ Thomas W. Phillips
United States District Judge